**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 12-1352

THOMAS A. DAVIS,

        Plaintiff – Appellant,

    v.

MPW INDUSTRIAL SERVICES, INC.,

        Defendant – Appellee.

Appeal from the United States District Court for the District of
South Carolina, at Greenville.    J. Michelle Childs, District
Judge.  (6:08-cv-03286-JMC)

Argued:  March 20, 2013           Decided:  July 23, 2013

Before TRAXLER, Chief Judge, WYNN, Circuit Judge, and HAMILTON,
Senior Circuit Judge.

Affirmed by unpublished opinion.  Judge Wynn wrote the opinion,
in which Chief Judge Traxler and Senior Judge Hamilton joined.

**ARGUED:** William Andrew Arnold, W. ANDREW ARNOLD, PC, Greenville,
South Carolina, for Appellant.    Phillip Arthur Kilgore,
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, PC, Greenville, South
Carolina, for Appellee.    **ON BRIEF:** Jeffrey P. Dunlaevy,
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, PC, Greenville, South
Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

In this contract dispute before us on diversity grounds, Plaintiff Thomas A. Davis argues that the district court erred by denying his motion for a new trial, refusing to give a requested jury instruction, and denying him treble damages and attorneys' fees under South Carolina's Wage Payment Act. We summarily reject Davis's arguments and affirm the district court's rulings in Defendant MPW Industrial Services, Inc.'s favor.

I.

MPW is an industrial cleaning business that services South Carolina businesses including a BMW manufacturing plant. Davis began working for MPW in 1997, and in 2005, was promoted to account manager for MPW's BMW account.

On July 26, 2005, David Barrows, MPW's Director of Operations, met with Davis to give him a written offer for the promotion. Jody Kerns, the former BMW account manager, had previously discussed the position with Davis, including the option of a 1% bonus for generating new work outside the existing BMW account. Because the July 26 offer letter omitted terms including the new work bonus, Barrows called Paul Bechard, an MPW General Manager. Barrows then handwrote additional terms on the bottom of the offer letter, including a "[n]ew work bonus

2

for increase of contract at BMW." J.A. 442. Davis signed the letter the next day.

According to Bechard, the new work bonus in Davis's offer letter referred to a "project booking bonus" policy that he developed to pay account managers a 1% bonus on growth beyond the annual baseline budget for each account. J.A. 543. Bechard's draft policy defined new business as "additional booked business beyond MPW [Facility Management] annual budgeted revenue for that account and annual year and is considered out of the base contract scope." Supp. J.A. 3. Davis never saw a copy of Bechard's draft policy. And MPW never implemented Bechard's draft policy. Bechard testified, however, that he believed Davis was owed a new work bonus.

In May 2008, MPW fired Davis after he violated company policy by allowing other MPW employees to take his unused vacation time. Several months later, Davis sued MPW in state court. Davis alleged that MPW breached its contract with him and violated the South Carolina Wage Payment Act by failing to pay him a 1% bonus worth over $120,000 and business expenses totaling $11,178.51.

MPW removed the case to federal court, where it was tried in February 2011. At trial, the parties proffered contradictory evidence indicating how the new work bonus, if it were owed, might be calculated and what it would total. For example, Davis

3

testified that the bonus should total $111,297.07. By contrast, former BMW account manager Kerns testified that no bonus was owed; if one was, it would total only $7,920.88 according to his calculation. And per MPW Controller Shane DeFazio, based on former MPW General Manager Bechard's testimony, if a bonus were owed, it would total either $14,240.86 or $45,131.03, depending on the formula used.

The jury returned a verdict finding that the parties had entered into a contract for a new work bonus, MPW breached the contract, and Davis was entitled to a new work bonus of $14,526. The jury denied Davis's expenses claim. Davis moved for an award of attorneys' fees and treble damages under South Carolina's Wage Payment Act and for a new trial. The district court denied both motions.

On appeal, Davis challenges the jury's damages award, the district court's refusal to give a proposed jury instruction, and the district court's denial of his motion for treble damages and attorneys' fees. We address each issue in turn.

II.

With his first argument, Davis contends that the jury's damages award "was against the clear weight of the evidence and based upon false evidence." Appellant's Br. at 27. Davis

4

argues that the district court therefore erred in denying his motion for a new trial on that basis.

"The decision to grant or deny a motion for a new trial is within the sound discretion of the district court and will not be disturbed absent a clear showing of abuse of discretion." Chesapeake Paper Prods. Co. v. Stone & Webster Eng'g Corp., 51 F.3d 1229, 1237 (4th Cir. 1995) (quotation marks omitted). Our review here reveals no such "clear showing" of abuse. See id.

The main thrust of Davis's argument: Because MPW presented the evidence regarding the $14,526 bonus figure as proof that there was no meeting of the minds, the jury should not have been permitted to use it in calculating Davis's damages. Notably, however, Davis made no such argument at trial. Davis made no objection to the pertinent evidence when it was introduced. Further, Davis neglected to request a jury instruction limiting in any way the jury's use of the evidence supporting its $14,526 award. See Curley v. Standard Motor Prods., Inc., 27 F.3d 562 (4th Cir. 1994) (unpublished table decision) (affirming denial of motion for a new trial where the "motion for a new trial was based primarily on objections which were foreclosed by [party's] failure to object to the introduction of evidence, and [party's] approval of, or failure to object to the court's instructions").

Further, with this argument, Davis asks us to jettison the jury's award because it is inconsistent with the parties'

5

theories of the case. Certainly, under the circumstances here, in which the complaining party in no way attempted to limit the jury's use of the evidence supporting its award, "[t]hat the jury's verdict is not consistent with either party's theory of valuation is no ground for a retrial." United States v. Smoot Sand & Gravel Corp., 248 F.2d 822, 829 (4th Cir. 1957).

## III.

With his next argument, Davis contends that the district court's "failure to give [his] requested jury instruction on construing ambiguous contracts against the drafter was an abuse of discretion." Appellant's Br. at 33. "Both the decision to give (or not to give) a jury instruction and the content of an instruction are reviewed for abuse of discretion." United States v. Russell, 971 F.2d 1098, 1107 (4th Cir. 1992). Through this deferential lens, we look to "whether the district court's instructions, construed as a whole, properly informed the jury of the controlling legal principles without misleading or confusing the jury." Hartsell v. Duplex Prods. Inc., 123 F.3d 766, 775 (4th Cir. 1997).

Upon reviewing the record, we cannot conclude that the district court abused its discretion in refusing to give Davis's requested charge. First, the requested instruction cannot be squared with Davis's position that the contract at issue here

was oral.  Specifically, when asked in discovery to produce the purported contract between the parties, Davis responded that "[t]he contract was oral" and that the July 26 letter was merely "an attempt to memorialize the oral promise of a 1% new work bonus."  J.A. 459-460.  This discovery response was entered as a joint exhibit at trial.  And Davis's counsel confirmed at trial that "we have an oral offer and acceptance . . . later put in writing . . . ."  J.A. 301.

South Carolina law indicates, "and the jury was so charged, that in order to obtain relief based upon an oral contract, the terms of a contract must be so clear, definite, certain, and precise, and free from obscurity or self-contradiction that neither party can reasonably misunderstand them, and can understand and interpret them without supplying anything." Davis v. MPW Indus. Servs., Inc., 6:08-CV-03286-JMC, 2012 WL 527601, at *3 (D.S.C. Feb. 16, 2012) (citing Aust v. Beard, 230 S.C. 515, 521 (1957) and White v. Felkel, 222 S.C. 313, 324 (1952)).  Because Davis conceded that the contract at issue was oral, the district court clearly did not abuse its discretion in refusing to give a jury charge on construing ambiguous contracts.  Further, to the extent Davis argues that the contract was a hybrid oral-written contract and that the district court erred in referring to Corpus Juris Secundum and treating the purported hybrid contract like an oral contract,

7

Davis has provided no South Carolina Supreme Court precedent showing that the district court failed to "properly inform[] the jury of the controlling legal principles" such that it abused its discretion. See Hartsell, 123 F.3d at 775.

IV.

With his third and final argument on appeal, Davis contends that the district court abused its discretion in refusing to award him attorneys' fees and treble damages in connection with his new work bonus claim. Reviewing this contention for abuse of discretion, Wall v. Fruehauf Trailer Servs., 123 F. App'x 572, 579 (4th Cir. 2005), we find none.

Section 41-10-80(C) of South Carolina's Wage Payment Act states that an "employee may recover in a civil action an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees as the court may allow." S.C. Code Ann. § 41-10-80 (emphasis added). The Supreme Court of South Carolina has highlighted the permissive statutory language in holding that "the penalty is discretionary with the judge" and would be "unjust and harsh" in "those cases where there is a bona fide dispute . . . ." Rice v. Multimedia, Inc., 318 S.C. 95, 98 (1995). Thus, the question facing a trial court is "whether, at the time [the defendant denied the plaintiff

8

wages due], it had a reasonable good faith reason for doing so." Mathis v. Brown & Brown of S.C., Inc., 389 S.C. 299, 316 (2010).

In this case, there can be no doubt that a bona fide dispute existed at the time MPW refused Davis the payments he demanded. Davis sought "earned bonus income in excess of $120,000" and expense reimbursements of roughly $11,000 and claimed that both amounts were subject to the Wage Payment Act's attorneys' fees and treble damages provisions. J.A. 10-11. Yet the jury awarded Davis less than 15% of what he sought with his bonus claim and none of his claimed expenses. After summarizing the evidence, the district court concluded that there existed an "inconsistency in the understanding of how the new work bonus would be calculated and whether the bonus was properly authorized," such that "at the time [MPW] declined to pay a new work bonus to [Davis], there was a bona fide dispute as to whether [MPW] owed [Davis] a bonus, and if so, the amount owed." J.A. 604. With this, we cannot disagree—and we summarily reject Davis's various, meritless arguments to the contrary.

V.

In conclusion, we affirm the district court's various rulings.

AFFIRMED

9